JAP:MCM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X
IN THE MATTER OF AN APPLICATION
OF THE UNITED STATES OF AMERICA
FOR ORDERS AUTHORIZING THE
DISCLOSURE OF LOCATION DATA
RELATING TO A SPECIFIED WIRELESS
TELEPHONE

- - - - - - - - - - - - - - -X

**13 MISC 0075**

FILED UNDER SEAL

AFFIDAVIT IN SUPPORT OF
APPLICATION
(Fed. R. Crim. P. 41; T. 18,
U.S.C., §§ 2703(c)(1)(A),
3103a and 3117; T. 28,
U.S.C., § 1651(a))

EASTERN DISTRICT OF NEW YORK, SS:

I, ERIC PECUNIA, being first duly sworn, hereby depose
and state as follows:

1.      I make this affidavit in support of an application
for a search warrant under Federal Rule of Criminal Procedure 41
and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location
of the cellular telephone assigned call number (347) 755-0256,
subscribed to by "John Turner" (the "SUBJECT TELEPHONE"), whose
wireless telephone service provider is T-Mobile (the "Service
Provider").  The SUBJECT TELEPHONE is described herein and in
Attachment A, and the location information to be seized is
described herein and Attachment B.

2.    I have been a Special Agent with the United States Secret Service for approximately fifteen years.  I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for bank fraud, wire fraud and related criminal activity, such as identity theft. These investigations are conducted both in an undercover and overt capacity.  I have participated in investigations involving search warrants and arrest warrants.  As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  Because the purpose of this affidavit is limited to demonstrating probable cause for the requested warrant, it does not set forth all of my knowledge about this matter.  In addition, when I rely on statements made by others, such statements are set forth only in part and in substance unless otherwise indicated.

4.    Based on the facts set forth in this affidavit, there is probable cause to believe that bank fraud in Title 18, United States Code, Section 1344, has been committed by FNU LNU, also known as "Richard Peters," "Hilton Blachman," "Thomas

2

Marlow," "Leroy Scriven," and "John Turner. There is also probable cause to believe that FNU LNU has used, and is currently using, the SUBJECT TELEPHONE to engage in bank fraud and related criminal activity. There is therefore probable cause to believe that the location information, including but not limited to E-911 Phase II data (or other precise location information) concerning the SUBJECT TELEPHONE (the "REQUESTED INFORMATION"),[1] as described in Attachment B, will constitute evidence of these criminal violations, and will lead to information relating to the location and identification of FNU LNU (hereinafter "FNU LNU") as well as identifying additional individuals who are engaged in the commission of these offenses.

### PROBABLE CAUSE

5.     On January 24, 2013, the Honorable Joan M. Azrack issued an arrest warrant for FNU LNU based on an application submitted by an agent from the United States Secret Service related to a scheme to defraud one or more financial institutions

---

[1] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the SUBJECT TELEPHONE at the start and end of any call or text message transmission. In requesting cell site information, the government does not concede that such cell site records — routinely retained by wireless carriers as business records — may only be obtained via a warrant issued on probable cause. See In re Application, 632 F. Supp. 2d 202 (E.D.N.Y. 2008) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.); In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (same).

of funds. As part of the scheme, as detailed further below, FNU LNU opened various bank accounts using false identities and transferred funds into these various accounts by, among other things, depositing checks that he obtained through fraudulent means into one or more of these accounts. FNU LNU purchased checks from discount check printing businesses under the name of various companies. FNU LNU provided sample checks that he fraudulently obtained from the New York City Department of Consumer Affairs ("NYC DCA") to the check printing businesses in order to place the order and requested that the new checks be mailed to one or more locations. Upon receipt of the fraudulently obtained company checks, FNU LNU then, among other things, deposited or attempted to deposit the checks into one or more bank accounts that he opened using false identities. As described in detail below, the undersigned believes that probable cause exists that FNU LNU used the SUBJECT TELEPHONE, among other things, to contact a co-conspirator who supplied FNU LNU with copies of checks from the NYC DCA.

      6.    On May 17, 2012, investigators from Applied Bank notified the United States Secret Service of deposits of checks that were later deemed to be counterfeit into the Applied Bank account of one Richard A. Peters ("Peters Applied Bank Account"). Three (3) checks, drawn on the JP Morgan Chase account of Time Warner and totaling over $530,000, were deposited into the Peters

4

Applied Bank Account on or about March 30, 2012, April 24, 2012, and May 14, 2012.

7.    On June 2, 2012, agents from the United States Secret Service were informed by Time Warner that in addition to the three counterfeit checks originally discovered to have been written to Richard Peters, Time Warner identified five (5) additional counterfeit checks dated on or about February 8, 2012, February 10, 2012, February 14, 2012, February 17, 2012, and February 20, 2012, respectively, payable to Enren Liao ("Liao"). The checks payable to Liao were not deposited in the Peters Applied Bank Account.

8.    A review of records related to the Peters Applied Bank Account revealed debits totaling over $264,000 via twelve checks written to three individuals: Richard Peters ("Peters"), Hilton Blachman ("Blachman"), and Thomas Marlow ("Marlow"). An examination of these checks revealed funds transfers from the Peters Applied Bank Account to various accounts belonging to Marlow, Blachman, and Peters. These checks were deposited into accounts held by Marlow, Blachman, or Peters at Ally Bank, First Niagara Bank, HSBC, Fidelity Investments, and JP Morgan Chase.

9.    Further review of the Peters Applied Bank Account revealed transactions between the Peters Applied Bank Account and other financial institutions, including Charles Schwab, HSBC, TD Ameritrade, Fidelity Investments, and First Niagra Bank, with

5

accounts opened under the name Richard A. Peters.

10.   Further investigation revealed that the accounts opened under Blachman's name, which received funds from the Peters Applied Bank Account, used the address 50 Lexington Avenue, PM-147, New York, New York 10010 ("50 Lexington Ave."). Upon visiting that address, the investigative agency learned that 50 Lexington Ave. belongs to an apartment complex and several storefronts, including a copy and mail center business.  The owner of the copy and mail center business informed an agent from the United States Secret Service that she rents a mailbox to a Leroy Scriven ("Scriven") and his co-signer, Hilton S. Blachman. The investigative agency obtained a copy of Scriven's and Blachman's drivers licenses and the rental application from the owner.

11.   A database search of the name Leroy Scriven revealed that Scriven has a valid New York State driver's license and suspended licenses in both Florida and Pennsylvania.  All of the licenses use the same name, spelling, date of birth, and social security number.  The an agent from the United States Secret Service requested the driver's license photographs from the New York, Florida, and Pennsylvania licenses.  The New York State driver's license photograph matches the photos of the individual using the Blachman Fidelity Account debit card to purchase goods at the Walmart in Glenmont on May 7, 2012.

12.    Further investigation revealed that an account was opened at Fidelity Investments using the name Leroy Scriven. Fidelity Investments informed an agent from the United States Secret Service that they commenced an investigation into Scriven in 2010 as a result of his funding of the account with a check that they determined to be fraudulent.

13.    An agent from the United States Secret Service contacted the New York State Division of Motor Vehicle ("NYSDMV") and an investigator from the DMV stated that it had an ongoing investigation into Scriven.

14.    Further investigation revealed that SCRIVEN has opened accounts at Citibank, TD Ameritrade, and at least four (4) accounts at JPMorgan Chase.

15.    The bank accounts described above were opened using various identities, including Richard Peters, Hilton Blachman, and Thomas Marlow.  Over the course of the investigation, an agent from the United States Secret Service determined that individuals fitting the pedigree information associated with those identities did not authorize the opening of these accounts in their names.  Telephone interviews of persons identified by an agent from the United States Secret Service to actually be Richard Peters, Thomas Marlow, and Hilton Blachman revealed that these individuals did not open any of the above-mentioned accounts and did not authorize the use of their

7

identity to open any of the above-mentioned accounts. During the interviews, Peters, Marlow, and Blachman indicated that they were victims of identity theft and have taken steps with the banks and/or law enforcement to attempt to rectify the situation.

16.    As mentioned above, an agent from the United States Secret Service contacted the NYSDMV with regard to Scriven. The NYSDMV Investigator informed an agent from the United States Secret Service that they have an ongoing investigation into Scriven and believe that the individual representing himself as Scriven in the New York State driver's license is not the true Scriven. Based on the investigation, the undersigned does not believe the Scriven accounts were opened by or with the authorization of the person who actually matches the social security number and date of birth used to open the accounts under the name Leroy Scriven.

17.    The NYSDMV Investigator also advised an agent from the United States Secret Service that, based on their investigation, Scriven has also been using the identity John F. Turner. An agent from the United States Secret Service investigated the address listed on the New York State driver's license for John F. Turner, 2920 Avenue R, Brooklyn, NY, which returned to a mail box rental store called A-1 Shipping.

18.    The owner of A-1 Shipping informed an agent from the United States Secret Service that one of the mail boxes, box

8

#104, is rented by a John Turner ("Mailbox #104"). An agent from the United States Secret Service was informed by the owner of the business that John Turner has been a customer since 2010. Turner provided a United States passport and a Berry Petroleum Company ID as proof of identity to rent the box. A database search revealed a valid passport in the name John F. Turner that was renewed in 2000 and expired in 2010. The passport photograph appears to match the photograph of the individual in the May 7, 2012 Walmart surveillance photos, the Scriven New York State driver's license, and the Citibank ATM surveillance footage discussed above.

19. As noted above, an agent from the United States Secret Service was informed by Time Warner that it identified five (5) additional counterfeit checks payable to Liao. During the course of the investigation into these five (5) counterfeit checks, an agent from the United States Secret Service discovered that there was an account at First Niagra under the name Enren Liao ("Liao First Niagara Account"). An employee from First Niagara Bank informed an agent from the United States Secret Service that Liao opened an account at First Niagara Bank in November 2011 and that account was forcibly closed in March 2012. A review of the Liao First Niagara Bank account transaction history revealed a number of transactions, including multiple deposits from "Symphony 80, Inc.," withdrawals, and debit card

purchases in January 2012.

20.    The Liao First Niagara Account also revealed a
January 2012 debit card purchase from a company named Carousel
Checks, Inc. ("Carousel Checks"), a company that prints and ships
checks to customers at a discounted price. An agent from the
United States Secret Service contacted Carousel Checks and was
informed that Carousel Checks shipped an order of checks to an
Enren Liao. The company name and address printed on the checks
was New Broadway 76, Inc., 4809 Avenue N, #312, Brooklyn, NY and
the account numbers on the checks returned to a JP Morgan Chase
account.

21.    A database search of the address 4809 Avenue N,
Brooklyn, NY revealed a business called "American Mail Depot,
Inc.," a business that rents mailboxes. An agent from the United
States Secret Service learned from the owner that mailbox #312
("Mailbox #312") is rented to a Leroy Scriven and the file
contained a New York State driver's license. The owner also
informed an agent from the United States Secret Service that
mailbox #376 was rented to a Robert F. Williamson ("Mailbox
#376"). Mailbox #376 also contained a driver's license on file;
however, upon examination, it was apparent that the driver's
licenses on file for the mailbox rented in the name of Leroy
Scriven and the mailbox rented in the name of Robert F.
Williamson portrayed the same individual.

10

22. On September 5, 2012, an agent from the United States Secret Service was informed by the owner of American Mail Depot that Mailbox #312 had received mail addressed to Richard A. Peters from M&T Bank. An agent from the United States Secret Service contacted M&T Bank concerning an account held in the name of Richard A. Peters and was advised that the account was opened in January 2012, using the address 4809 Avenue N, #312, Brooklyn, NY ("Peters M&T Bank Account"). Records for this account revealed three debit card purchases at a company called "Checks for Less," which is also known as Ei Printing on or about August 3, 2012. Records for the Peters M&T Bank Account also showed an attempted deposit of a check in the amount of $4995 drawn off of the New York Road Runners JP Morgan Chase Account on or about August 24, 2012.

23. An agent from the United States Secret Service learned from Checks for Less that at least three (3) purchases were made using the debit card associated with the Peters M&T Bank account ordering checks for the following entities: (1) New Broadway 76, Inc., (2) Charles Sally and Charles, Inc., and (3) New York Road Runners, Inc. A review of these purchase orders revealed, among other things, that the checks provided as samples for all three orders were all checks that had been processed and stamped with a receipt number in 2011 and 2012 by either the NYC DCA or the Department of Health and Mental Hygiene ("DOH").

11

24.     The owner of the company New Broadway 76, Inc.,[2] informed an agent from the United States Secret Service that JP Morgan Chase recently advised her of an individual attempting to cash a check drawn off of her New Broadway 76, Inc. business account. The owner further advised an agent from the United States Secret Service that she made a payment to the New York Department of Consumer Affairs in January 2012 for a license renewal.

25.     A representative from Charles Sally & Charles, Inc. advised an agent from the United States Secret Service that an individual attempted to draw a check payable to Erik Wilhelmsson[3] off of his JP Morgan Chase account. The representative stated that the check number on the check payable to Erik Wilhelmsson is identical to a check number for a check that is unissued and still in the company's possession. The representative further stated that he recently made a payment to the New York City Department of Health for a new permit. He advised that he sent an authorized individual to the Department of Health to complete the transaction.

---

[2] New Broadway 76, Inc. is doing business as Belleclair Cleaners.

[3] Based on the ongoing investigation, it is the undersigned's belief that Erik Wilhelmsson's identity has been compromised and is being used by FNU LNU as part of his fraudulent scheme. A discussion with the Wilhelmsson who fits the pedigree information suggests that he is a victim of identity theft.

12

26.    The Chief Financial Officer from Road Runners, Inc. informed an agent from the United States Secret Service that neither she nor anyone else at the organization authorized the check made payable to Richard Peters.

27.    During the course of the investigation, the an agent from the United States Secret Service was further informed by an employee of Checks for Less that there were additional purchase orders for Richard Peters, as well as purchase orders for Enren Liao and Robert Harris.  According to the representative from Checks for Less, purchase orders for checks for the following companies were placed associated with the name Enren Liao and shipped to Mailbox #312:

    a.    Thai Select Inc. (ordered on or about 2/3/12);

    b.    Champion Auto Center Inc. (ordered on or about 1/21/12); and

    c.    J&R Electronics Inc. (ordered on or about 3/2/12)

28.  An agent from the United States Secret Service was further informed by an employee of Checks for Less that, according to the representative from Checks for Less,  purchase orders for checks for the following companies were placed associated with the name Richard Peters and shipped to Mailbox #312:

13

a.  Alpha General Carpentry Inc. (ordered on or about 12/31/11);

b.  Ridgewood Farm Market Inc. (ordered on or about 5/27/12);

c.  Charles Sally & Charles Inc. (ordered on or about 8/6/12);

d.  New Broadway 76 Inc.; (ordered on or about 7/30/12) and

e.  New Road Runners Inc. (ordered on or about 8/20/12).

29.  An agent from the United States Secret Service was further informed by an employee of Checks for Less that, according to the representative from Checks for Less, purchase orders for checks for the following companies were placed associated with the name Robert Harris[4] and shipped to Mailbox #312:

a.  WEDO Dry Cleaners Corp. (ordered on or about 9/24/12).

30.  A review of these purchase orders revealed, among other things, that the sample checks provided to Checks for Less

---

[4]  Based on the ongoing investigation, it is the undersigned's belief that Robert Harris' identity has been compromised and is being used by FNU LNU as part of his fraudulent scheme. A discussion with the Harris who fits the pedigree information suggests that he is a victim of identity theft.

for all of these purchases were all checks that had been
processed and stamped with a receipt number by the NYC DCA.

31.     An agent from the United States Secret Service
also contacted Symphony 80, Inc., which was listed as having
multiple deposits into the Liao First Niagara account.  An agent
from the United States Secret Service was informed by the owner
that the TD Bank account of Symphony 80, Inc. was debited $4800
via check made payable to Enren Liao.  Two additional checks made
payable to Enren Liao were attempted to be drawn off of this
account.  The owner informed an agent from the United States
Secret Service that he had been informed of the transactions by
TD Bank and he advised them that none of the three checks were
authorized.  The owner provided an agent from the United States
Secret Service with a digital copy of a check that he had
written, payable to "NYC DCA" in December 2011 for a business
license.  The owner informed an agent from the United States
Secret Service that he conducted this transaction in person at
the NYC DCA.

32.     Upon speaking to representatives from the NYC
DCA, an agent from the United States Secret Service was informed
that the licensing bureau located at 42 Broadway, New York, New
York processes licenses for both the Department of Consumer
Affairs and the Department of Health.  After providing
information related to the sample checks provided to Checks for

15

Less, an agent from the United States Secret Service learned from a representative at the NYC DCA that, while the Champion Auto Center check could not be located in the NYC DCA's files, the other eight checks sent as samples for the purchase orders associated with Enren Liao, Peters, and Harris were all processed by the NYC DCA. Based on the investigation, the undersigned believes that FNU LNU is not an employee of the NYC DCA.

33. Upon speaking to representatives from the NYC DCA, an agent from the United States Secret Service was informed that the licensing bureau located at 42 Broadway, New York, New York processes licenses for both the Department of Consumer Affairs and the Department of Health. After providing information related to the sample checks provided to Checks for Less, an agent from the United States Secret Service learned from a representative at the NYC DCA that, while the Champion Auto Center check could not be located in the NYC DCA's files, the other eight checks sent as samples for the purchase orders associated with Enren Liao, Peters, and Harris were all processed by the same person, AUGUSTINE EMEH.

34. A review of AUGUSTINE EMEH's telephone records, which were obtained pursuant to subpoena, revealed that the SUBJECT TELEPHONE listed by FNU LNU on an insurance policy and in connection with a property contract appeared in AUGUSTINE EMEH's ingoing and outgoing phone calls approximately 1844 times between

16

January 2011 and October 2012.

     35.   On February 6, 2013, an agent from the United States Secret Service called the SUBJECT TELEPHONE in an undercover capacity. The undersigned was present when the conversation took place. An individual who identified himself as"John Turner" answered the phone. In addition, the individual on the phone who identified himself as John Turner had a voice which appeared to sound like recordings provided to an agent from the United States Secret Service by Charles Schwab of an individual inquiring into the bank account of Richard Peters.

     36.   There is therefore probable cause to believe that the REQUESTED INFORMATION will lead to evidence regarding the activities described above and the location and identification of FNU LNU and other individuals engaged in the commission of these offenses.

**AUTHORIZATION REQUEST**

     37.   WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), it is requested that the Court issue a warrant and Order authorizing agents to obtain the REQUESTED INFORMATION for a period of 30 days.

     38.   IT IS FURTHER REQUESTED that the Court direct the Service Provider to assist law enforcement by providing all information, facilities and technical assistance needed to ascertain the REQUESTED INFORMATION, and further direct the

17

service provider to initiate a signal to determine the location of the SUBJECT TELEPHONE on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement officer serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user of the SUBJECT TELEPHONE, for a period of 30 days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the United States Secret Service.

39.   IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the SUBJECT TELEPHONE outside of daytime hours.

23.   IT IS FURTHER REQUESTED, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed or any extension thereof. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscribers or users of the SUBJECT

18

TELEPHONE would seriously jeopardize the ongoing investigation, as such disclosure would give the targets of the investigation an opportunity to destroy evidence, notify confederates, and flee from and evade prosecution.  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

        40.  IT IS FURTHER REQUESTED that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing these documents is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations, and not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other criminals as they deem appropriate, e.g., by posting them publicly through online forums.  Therefore, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change

20

patterns of behavior, and notify confederates.

   41. IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. § 2705(b) and for the reasons stated above, it is further requested that the Court issue an Order commanding AT&T not to notify any person (including the subscribers or customers of the account listed in the attached warrant) of the existence of the attached warrant until further order of the Court.

Dated:  Brooklyn, New York
     February 7, 2013

         _Eric Pecunia_
         ERIC PECUNIA
         Special Agent
         United States Secret Service

Sworn to before me the 7 day of February, 2013

s/Ramon E. Reyes, Jr.
_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

20

**ATTACHMENT A**

<u>Property To Be Searched</u>

1.    The cellular telephone assigned call number (347) 755-0256, (the "SUBJECT TELEPHONE"), whose wireless service provider is T-Mobile, a company headquartered at 12920 SE 38th Street Bellvue, Washington 98006.

2.    Information about the location of the SUBJECT TELEPHONE that is within the possession, custody, or control of T-Mobile.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the SUBJECT TELEPHONE described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the SUBJECT TELEPHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the SUBJECT TELEPHONE on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. See 18 U.S.C. § 3103a(b)(2).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# 13 MISC 0075

- - - - - - - - - - - - - - - - x

**TO BE FILED UNDER SEAL**

IN RE APPLICATION OF THE
UNITED STATES OF AMERICA FOR
AUTHORIZATION TO OBTAIN
LOCATION DATA CONCERNING A
MOBILE TELEPHONE ASSIGNED
NUMBER (347) 755-0256

ORDER

- - - - - - - - - - - - - - - - x

Application having been made for a search warrant under
Federal Rule of Criminal Procedure 41 and 18 U.S.C.
§ 2703(c)(1)(A) for information about the location of the
cellular telephone assigned call number (347) 755-0256,
subscribed to by "John Turner" (the "SUBJECT TELEPHONE"), whose
wireless telephone service provider is T-Mobile (the "Service
Provider"), as further described in Attachment B to the search
warrant (the "REQUESTED INFORMATION");

The Court finds that there is probable cause to believe
that the REQUESTED INFORMATION will constitute or lead to
evidence of violations of 18 U.S.C. § 1344, as well as to the
identification of individuals who are engaged in the commission
of these offenses. The Court also finds that there is reasonable
cause to believe that providing immediate notification of the
execution of the warrant may seriously jeopardize an ongoing
investigation, including by giving targets an opportunity to flee
or continue flight from prosecution, destroy or tamper with

evidence, change patterns of behavior, or notify confederates. See 18 U.S.C. §§ 2705(b)(2), 2705(b)(3) and 2705(b)(5). Furthermore, the execution of this warrant will not result in the seizure of any tangible property or any wire or electronic communication (as defined in 18 U.S.C. § 2510). To the extent that the warrant authorizes the seizure of any stored wire or electronic information, that seizure is expressly authorized by 18 U.S.C. § 2703(c)(1)(A).

IT IS HEREBY ORDERED pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) that law enforcement officers, beginning at any time within ten days of the date of this Order and for a period not to exceed 30 days, may obtain the REQUESTED INFORMATION concerning the SUBJECT TELEPHONE, with said authority to extend to any time of the day or night as required, including when the SUBJECT TELEPHONE leaves the Eastern District of New York; all of said authority being expressly limited to ascertaining the physical location of the SUBJECT TELEPHONE and expressly excluding the contents of any communications conducted by the users of the SUBJECT TELEPHONE.

It is further ORDERED that T-Mobile (the "service provider") assist law enforcement by providing all information, facilities and technical assistance needed to ascertain the REQUESTED INFORMATION, including by initiating a signal to determine the location of the SUBJECT TELEPHONE on the service

2

provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as the service provider accords the users of the SUBJECT TELEPHONE.

It is further ORDERED that the U.S. Secret Service compensate the service provider for reasonable expenses incurred in complying with any such request.

It is further ORDERED that the Court's Order and the accompanying Affidavit submitted in support thereof be sealed until further Order of the Court, except that copies of the Court's Order in full or redacted form may be maintained by the United States Attorney's Office, and may be served on law enforcement officers, and other government and contract personnel acting under the supervision of such law enforcement officers, and the service provider as necessary to effectuate the Court's Order.

It is further ORDERED that this warrant be returned to the issuing judicial officer within 14 days after the termination of the monitoring period authorized by the warrant.

It is further ORDERED that, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3),

3

service of notice may be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extension thereof.

It is further ORDERED under 18 U.S.C. § 2705(b) that T-Mobile shall not disclose the existence of the attached warrant, or this Order of the Court, to the listed subscriber or to any other person, unless and until otherwise authorized to do so by the Court, except that T-Mobile may disclose the attached warrant to an attorney for T-Mobile for the purpose of receiving legal advice.

It is further ORDERED that this Order apply to any changed mobile telephone number subsequently assigned to the SUBJECT TELEPHONE within the period of this Order.

It is further ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

Dated:     Brooklyn, New York
           February 7, 2013

s/Ramon E. Reyes, Jr.

THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK